NO. 07-02-0234-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 7, 2003
_____

PHILLIP COOPER,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B13279-9901; HON. ED SELF, PRESIDING
_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Phillip Cooper (appellant) appeals from a final judgment revoking his probation. Through three issues, he asserts that 1) the trial court should have held a hearing to determine his competency, 2) his plea was involuntary, 3) the trial court erred in calculating the amount of fine, fees and restitution he owed, and 4) the trial court erred in calculating his credit for time served. We modify the judgment and affirm it as modified.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

### *Issue One — Competency and Involuntariness*

Appellant argues that the trial court should have conducted a competency hearing, *sua sponte*, because appellant's "overwhelming focus" upon his "medical condition" and "its resolution" indicates that he was incompetent. This fixation also caused his pleas of true to all but one of the allegations in the State's motion to revoke probation to be involuntary, according to appellant.

*Sua Sponte Competency Hearing*

A person is incompetent to stand trial if he does not have 1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or 2) a rational as well as factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46.02 §1(A)(a) (Vernon Supp. 2003). If, during trial, evidence of the defendant's incompetency is brought to the attention of the trial court from any source, it then must conduct a hearing to determine whether there is evidence to support a finding of incompetency.[2] *Id.* §2(b) (Vernon 1979). However, a *sua sponte* hearing is required only if the evidence brought to the trial court's attention raised a bona fide doubt in the mind of the judge as to the defendant's competency. *Alcott v. State,* 51 S.W.3d 596, 601 (Tex. Crim. App. 2001). Finally, a bona fide doubt arises when the evidence indicates the accused suffered recent severe mental illness, moderate mental retardation, or truly bizarre acts were committed by the defendant. *McDaniel v. State,* 98 S.W.3d 704, 710 (Tex. Crim.

---

[2] A probation revocation hearing is a trial for purposes of competency issues. *Thompson v. State,* 654 S.W.2d 26, 28 (Tex. App.--Tyler 1983, no pet.) (holding that due process requires that no person shall have his probation revoked while incompetent); *see also Reeves v. State,* 46 S.W.3d 397, 399 (Tex. App.-- Texarkana 2001, pet. dism'd) (the court addressed the trial court's failure to conduct a competency hearing with respect to the revocation of the defendant's probation).

App. 2003); *Alcott v. State,* 51 S.W.3d at 599 n.10; *Reeves v. State,* 46 S.W.3d 397, 399 (Tex. App.--Texarkana 2001, pet. dism'd).

Here, appellant contends that the trial court was obligated to *sua sponte* conduct a hearing because he purportedly was fixated on his medical condition. Yet, a review of the record does not bear that out. Appellant did describe his medical problems during the hearing upon the State's motion to revoke probation, but he generally did so in response to questioning by either the prosecutor or his own counsel. And, though he spoke of those conditions, he did not dwell on them, as counsel for appellant insinuates. Furthermore, the purported maladies consisted of his having injured his leg after falling from a bunk at some unmentioned time and his having suffered abdominal pains "two or three Wednesdays ago."[3] Whether he felt pain at the time of the hearing is something we cannot discern from the record for it is silent on the matter. So too does it fail to illustrate whether his condition distracted him, in any way, from preparing for the hearing or participating in his defense. And, while he may have rambled at times in answering questions propounded to him, the questions asked were often quite open-ended, calling for less than a succinct response.[4] Under that circumstance, one can hardly conclude that the rambling answers evinced some mental defect or incompetence.

We further note that during the hearing, appellant's counsel not only stated that he believed appellant to be competent, but appellant himself stated that: 1) the allegations in the motion to revoke were true (save for one); 2) no one "forced him" to plead true; 3)

---

[3]The pains were diagnosed as symptoms of diverticulosis.

[4]For instance, appellant was asked "what is your medical condition," "do you want to address the court on 5(A)," "what other medical problems do you have," and "what do you want the judge to do . . . I want you to clarify that."

3

no one promised him anything or threatened him in return for the plea; 4) he could read, write and understand English; 5) he has not been treated for a mental illness; 6) he understood he had the right to hear, see and confront his accusers; 7) he understood he had a right not to incriminate himself; 8) he understood the effect of the stipulation of evidence he executed; 9) he understood that the trial court could revoke his probation simply upon his pleas of true to the allegations in the motion to revoke; 10) he discussed the stipulation of evidence and "declaration authorizing pre-sentence investigation report" with his attorney; 11) he voluntarily and freely signed the stipulation of evidence; and, 12) despite understanding his rights, he nevertheless wished to plead true to all but one of the allegations in the motion to revoke.[5]  In providing that information to the trial court, appellant's answers were coherent and responsive to the corresponding questions.  So too did they lead that court to find "that the plea of true to those allegations [was] freely, voluntarily, knowingly, and *intelligently* made . . . ."  (Emphasis added).

In short, the record fails to contain evidence indicative of any recent severe mental illness, moderate mental retardation, or truly bizarre acts by appellant.  Nor does it evince an inability on the part of appellant to consult with his lawyer with a reasonable degree of rational understanding or to rationally understand the proceedings against him.[6]  Moreover, the very same evidence illustrating that appellant was quite competent also evinced that

---

[5]As to the one allegation to which appellant did not plead true, he explained to the court in a coherent manner why he thought it untrue.  Simply put, he said he admitted to using drugs every day to receive assistance from Serenity House, even though the admission was false.  We do not say that the explanation is wise or reasonable but only that it was coherently uttered.

[6]Indeed, that appellant may have turned to the State for help with his medical conditions may itself be evidence of his competency.  It is well-settled that the State must provide medical care for those it incarcerates.  *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

appellant's pleas of true were voluntary and made while intelligently understanding their potential consequences. Consequently, we overrule issue one.

### Issue Two — No Credit

Next, appellant contends that the trial court erred in failing to give him "credit on his fine and fees and in assessing too much restitution." We sustain the issue in part and overrule the remainder.

As to the matter of restitution, appellant agreed, at the hearing on his initial guilty plea, to pay the entire $875 as restitution. That was a condition of the plea bargain, a condition to which the court accepted.

As to the matter of credit "on his fine and fees," appellant argues that he was entitled to a $120 credit. The State concedes on appeal that he is entitled to a $130 credit and that it credited the sum against the outstanding restitution, reducing the latter to $745.

### Issue Three – Calculation of Time Served

In his last issue, appellant contends that the trial court "erred in giving [him] only 171 days credit against his sentence." We overrule the issue.

Appellant contends that he is entitled to a credit of 252 days. His argument, however, is dependent upon our consideration of an affidavit executed by appellant and attached to his appellate brief.[7] Affidavits and like documents attached to one's brief cannot be considered by the court. *Merchandise Center, Inc. v. WNS, Inc.,* 85 S.W.3d

---

[7]We find it ironic that while appellant suggests in his first issue that he was incompetent he nonetheless finds himself sufficiently competent to calculate the days of credit to which he is purportedly entitled and execute an affidavit containing that information.

389, 394 (Tex. App.--Texarkana 2002, no pet.). We must limit our consideration of evidence to that appearing in the record before the trial court. *Id.*

Accordingly, we modify the judgment below to reflect that the amount of restitution owed by appellant is $745 rather than $875 and affirm the judgment as modified.


Brian Quinn
Justice

Do not publish.

6