NO. 07-02-0382-CR
NO. 07-02-0383-CR
NO. 07-02-0384-CR
NO. 07-02-0385-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 10, 2004
_____

TOMMY WAYNE ROE,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NOS. 43,628-B, 43,629-B, 44,852-B, 45,396-B; HON. JOHN B. BOARD, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

In these four companion cases, appellant Tommy Wayne Roe appeals from his convictions based upon his guilty pleas to criminal mischief, aggravated assault against a public servant, and two charges of assault against a public servant. The two issues

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. §75.002(a)(1) (Vernon Supp. 2004).

asserted by him are common to each appeal. So, we consider them together, and through them, he contends 1) the evidence was factually insufficient to support the trial court's finding that he was competent to stand trial, and 2) the trial court erred in failing to empanel a jury to determine his competency. We affirm the judgments.

## *Background*

Appellant was originally indicted for the offenses of criminal mischief and aggravated assault on a public servant. His indictment for the additional two assaults arose from incidents occurring while he was in jail pending trial for the original charges.

Questions as to appellant's competency arose prior to trial. A jury was convened to determine them and, on November 19, 2001, it found him competent to stand trial. Thereafter, he was tried for aggravated assault and found guilty. However, the trial court delayed sentencing due to appellant's behavior at trial as well as his counsel's statements regarding her inability to communicate with appellant. This resulted in the trial court empaneling another jury to assess his competency on March 28, 2002. The jury, however, was unable to reach a verdict, and a mistrial was declared.

A third competency hearing was held on July 9, 2002. There, both appellant and the State requested the jury to find him incompetent to stand trial. The jury did so but also found that there existed a substantial probability that appellant would regain his competency in the foreseeable future. Thus, he was committed to Vernon State Hospital (Vernon).

On July 26, 2002, the staff at Vernon certified appellant as competent to stand trial. Within 19 days of the certification, that is, on August 14, 2002, appellant appeared in the trial court and pled guilty to all four offenses without a recommended punishment. During

2

that proceeding, the report from Vernon certifying appellant as competent was received into evidence. So too did the trial court question appellant about his knowledge and understanding of the charges levied against him, his understanding of his rights, his pleas to the various charges, the waiver of his rights attendant to a trial by jury, the effect of his guilty pleas, the voluntariness of his pleas, his admission into Vernon, and Vernon's finding of competency, among other things.

Though many of the questions asked by the trial court at the plea hearing required a simple "yes" or "no" answer and appellant's initial replies were not always responsive to the questions, appellant did ultimately answer each question in a way indicating that he understood the question. So too did he respond in a manner illustrating that he understood the charges against him, wished to plead guilty to them, was aware of the effect of his pleas and waivers, and was aware of the nature of the proceeding in which he was then involved. Given this, the trial court found appellant competent to stand trial, accepted the guilty pleas, found him guilty for the offenses charged and, once a punishment hearing was concluded, levied sentence.

### Issue One - Factual Sufficiency of the Evidence

In his first issue, appellant contends that the evidence presented to the court during the plea hearing was factually insufficient to find him competent to stand trial. We overrule the issue.

The standard by which we review the factual sufficiency of the evidence is well established and fully discussed in *Zuliani v. State,* 97 S.W.3d 589, 593-95 (Tex. Crim. App.

3

2003) and *King v. State,* 29 S.W.3d 556, 563 (Tex. Crim. App. 2000). We refer the litigants to them for their discussion.[2]

Next, a person is incompetent to stand trial if he lacks 1) sufficient *present ability* to consult with his lawyer with a reasonable degree of rational understanding or 2) a rational and factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46.02 §1A(a) (Vernon Supp. 2004) (Emphasis added). Furthermore, one is presumed competent unless proved incompetent by a preponderance of the evidence. *Id*. §1A(b).

Additionally, when an accused is found incompetent and sent to a mental health facility, as appellant was here, the head of the facility must notify the trial court when "he is of the opinion that the defendant has attained competency . . . ." *Id.* §5(f)(1). And, when the accused is discharged, "a final report shall be filed with the court documenting the applicable reason for the discharge . . . ." *Id.* §5(i). Moreover, the trial court

> is authorized to make a determination based solely on the report with regard to the defendant's competency to stand trial, unless the prosecuting attorney or the defense counsel objects in writing or in open court to the findings of the report within 15 days from the time the report is served on the parties.

*Id.* Finally, if the accused is found competent to stand trial, criminal proceedings against him may be resumed. *Id.* §5(k). With this said, we turn to the record before us.

As previously mentioned, appellant was found incompetent and sent to a mental health facility, *i.e.* Vernon. Thereafter, he was discharged and, in the ensuing report, categorized as "competent to stand trial" by the chief psychiatrist at Vernon. So too was

---

[2]Appellant asks that we either modify or deviate from the standard of review discussed in the cases we cite due to recent writings of the Texas Supreme Court. However, the Texas Court of Criminal Appeals has final say in things criminal, not the Texas Supreme Court. And, since it has prescribed a particular standard of review, we must follow it as prescribed.

he described, in the report, as 1) demonstrating "a factual and rational understanding of the court personnel and proceedings," 2) having "an appreciation of the charges and legal strategy" and "an awareness of the consequences and penalties if convicted," 3) having "the capacity to disclose facts and testify relevantly," 4) having the ability "to assist his attorney in preparing his defense" and to "conform his behavior to the acceptable decorum of the court," 5) having "adequate memory, attention, intellectual functioning," 6) having the "ability to engage in a logical and coherent discussion," 7) "functioning in the average range of intelligence," and 8) demonstrating "adequate decision-making ability to select a reasonable strategy on his case." The chief psychiatrist also stated in the report that appellant "has been diagnosed with malingering and has a strong potential for exaggerating symptoms which might include bizarre acting out behaviors . . . ." The possibility that appellant "will become extremely desperate while in jail and exaggerate symptoms in a desperate bid to appear mentally ill . . . to try and avoid the consequences of the current charges," was further noted. Nothing of record indicates that either party objected to this report. This is of import given that statute authorizes the trial court to determine his competency solely from it. TEX. CODE CRIM. PROC. ANN. art. 46.02 §5(i) (Vernon Supp. 2004). So, at the very least, it provides more than ample evidence to support the trial court's finding of competency.

That the trial court may have voiced some disagreement with the allusion to appellant "malingering" does not render the report bereft of weight or the finding of competency factually insufficient. That aspect of the report was one of many observations uttered therein. And, at no time did the trial court state that it disagreed with any other observation in it, including those involving the accused's ability to engage in legal strategy,

5

demonstrate adequate decision-making ability, function within an average range of intelligence, factually and rationally understand the criminal proceedings in which he was involved, appreciate the charges and consequences if convicted, disclose facts and testify relevantly, or conform his conduct and assist his attorney in preparing his defense. To this, we also add the trial court's observations of appellant, his demeanor, and his answers to the court's questions during the plea hearing. Indeed, the trial court expressly stated that those observations influenced its decision. Consequently, we are unable to say that the evidence of appellant's competency to stand trial at the time of the plea hearing was too weak to support the trial court's finding or that the proof of his competency was against the great weight and preponderance of the evidence.

### Issue Two - Sua Sponte Hearing

In his second issue, appellant faults the trial court for failing to empanel another jury to consider his competency as a result of his responses at the plea hearing. We overrule the issue.

Whether the trial court erred in failing to empanel a jury depends upon whether it abused its discretion. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000). And, whether it abused its discretion depends upon whether its decision fell outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

Next, a trial court need not *sua sponte* empanel a jury to determine competency unless evidence brought to the trial court's attention is sufficient to raise a *bona fide* doubt in the mind of the judge as to the defendant's competency to stand trial. *Alcott v. State,*

6

51 S.W.3d 596, 601 (Tex. Crim. App. 2001); *Moore v. State*, 999 S.W.2d at 393. Generally, such a doubt exists only if the evidence indicates recent severe mental illness, moderate mental retardation, or truly bizarre acts by the defendant. *McDaniel v. State,* 98 S.W.3d 704, 710 (Tex. Crim. App. 2003); *Alcott v. State,* 51 S.W.3d at 599 n.10; *Reeves v. State,* 46 S.W.3d 397, 399 (Tex. App.--Texarkana 2001, pet. dism'd). And, again, it must support the inference that the accused lacked the *present ability* to consult with his attorney or a rational and factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46.02 §1A(a) (Vernon Supp. 2004); *see Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995) (stating that competency considerations involve an individual's present ability to consult with his attorney or understand the proceedings against him).

Here, the trial court had a report from Vernon wherein appellant was found to be competent. That report was issued within three weeks before the plea hearing, and statute authorized the trial court to rely exclusively on it when considering appellant's competency.

As to appellant's answers at the plea hearing, some of the initial ones were indeed unresponsive to various questions propounded. Yet, his ultimate replies proved highly responsive. Those answers also evinced appellant's understanding of the proceedings against him and the voluntariness of his actions, or the trial court could have so reasonably held.

Furthermore, the plea hearing was bereft of outbursts or bizarre actions on the part of appellant. So too did defense counsel refrain from suggesting that her client was unable to communicate with her or was unaware of either the nature of the proceedings against

7

him or his situation. This is telling for that same counsel was not only aware of appellant's prior condition but also instrumental in having him previously declared incompetent by a jury. Yet, at the plea hearing, she said nothing about appellant being incompetent at the time.

Given the record before us, we cannot say that the evidence created a *bona fide* doubt of appellant's competency. Thus, we cannot say that the failure to empanel another jury to address appellant's competency at the time of the plea hearing fell outside the zone of reasonable disagreement or that the trial court abused its discretion.

Accordingly, the judgments of the trial court are affirmed.


Brian Quinn
Justice

Do not publish.