**Opinion filed November 17, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00010-CR

_____

### MICHAEL ANDREW GUERRA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court Cause No. 010874**

### M E M O R A N D U M   O P I N I O N

In 2015, a jury convicted Appellant, Michael Andrew Guerra, of indecency with a child by contact. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2019). The trial court assessed his punishment at confinement for a term of five years in the Institutional Division of the Texas Department of Criminal Justice. However, the trial court suspended Appellant's sentence and placed him on community

supervision for seven years. The trial court subsequently revoked Appellant's community supervision and sentenced him to confinement for a term of five years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant challenges the trial court's revocation of his community supervision in two issues. He contends that the trial court abused its discretion at the hearing on the motion to revoke by (1) failing to order a formal competency examination and (2) failing to conduct an informal competency inquiry. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.004(c)–(d), .005 (West 2018).

We previously abated this appeal and remanded this cause to the trial court to conduct, if feasible, a retrospective competency trial. A copy of our September 8, 2022 abatement order is attached as an appendix to this opinion. We expressly incorporate the abatement order as a part of the opinion in this appeal.

In our abatement order, we determined that during the hearing on the motion to revoke, "some evidence" came to the attention of the trial court suggesting that Appellant might be incompetent. *See Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013). We concluded that the trial court abused its discretion in failing to stay the proceedings to conduct a formal competency trial. Accordingly, we instructed the trial court to determine if a retrospective competency trial was feasible. By doing so, we essentially sustained Appellant's second issue. Further, we sustained Appellant's first issue by determining that the trial court should have conducted a formal competency trial.

In response to our abatement order, the trial court determined that a retrospective competency trial is not feasible. On the reinstatement of this appeal, we now reverse Appellant's conviction and remand this cause for a new trial.

2

*Background Facts*

On March 30, 2017, the State filed its initial motion to revoke Appellant's community supervision. In September 2017, Appellant's trial counsel filed a motion suggesting incompetency wherein he requested an examination of Appellant. In trial counsel's September 2017 motion suggesting incompetency, he described Appellant as "fixated on the idea that his detention is unlawful," exhibiting "rapid, and frequently non-stop speech," and exhibiting the belief that he is the "victim of ongoing injustice" and "is being persecuted by the system." The State did not oppose the motion and the trial court issued an order for Appellant's examination.

In February 2018, after a hearing, the trial court entered an order of commitment based upon its determination "that there is sufficient evidence to believe that this Defendant does not possess a rational understanding of the charges against him and that this Defendant is not able to provide meaningful assistance to Counsel in the preparation of this matter for trial." Based upon its determination of incompetency, the trial court committed Appellant to North Texas State Hospital, Vernon Campus, in February 2018.

At some point later, Appellant was hospitalized at Big Spring State Hospital. On August 8, 2018, the trial court extended Appellant's commitment by twelve months because evidence indicated that Appellant was not yet competent to stand trial. The examining physicians diagnosed Appellant with schizoaffective disorder and polysubstance abuse, which they determined required consistent medication in order for Appellant to maintain competency. Our record does not indicate when Appellant was released from Big Spring State Hospital—however, the twelve-month extension expired on August 7, 2019.

3

Appellant's revocation hearing occurred on September 3, 2019. At the beginning of the hearing, Appellant's counsel informed the trial court that he needed to bring a matter to the court's attention "before making an announcement of ready." Trial counsel stated that Appellant did not understand the reason for the hearing and that Appellant believed that there were no pending charges against him with respect to indecency with a child. Trial counsel further advised the court that Appellant "persists in agreeing with his present competence."

The trial court briefly questioned trial counsel about Appellant's competency. Trial counsel advised the trial court that he was not able to discuss the pending motion to revoke with Appellant because Appellant believed that his conviction for indecency with a child "went away." Trial counsel informed the trial court that, in August, Appellant was found competent and tried on an assault charge, but counsel distinguished the two cases—explaining to the trial court that Appellant understood the other charges but was unable to understand the revocation hearing because he believed the indecency charge was dropped. The trial court did not question Appellant, but instead declared that it was "willing to stand on the finding of competency unless there is another motion submitted concerning competency."

During the hearing, Appellant made frequent interjections indicating he did not understand the proceeding. Appellant testified at the revocation hearing. He frequently accused the trial court and attorneys of "typing up new papers" and accusing him of a crime that happened while he was incarcerated. His testimony was rambling and often unintelligible. With respect to his conviction for indecency with a child, Appellant testified that there were papers that "proved" he was innocent. He also testified: "Y'all are abusing my rights, my constitutional rights and everything and the Declaration of Independence, constitutional rights, statute of

4

limitations and civil rights." Appellant testified that, after his release from Big Spring and return to Jones County, he refused to take all medication prescribed at the state hospital in Big Spring. At the conclusion of the hearing, the trial court stated on the record that Appellant spoke "extremely rapidly, nonresponsively."

We concluded in our previous abatement order that there was at least "some evidence" that Appellant was incompetent and that the trial court abused its discretion when it failed to initiate a formal competency trial and stay the proceedings as required by Article 46B.004(c)–(d).

*Analysis*

Upon reinstatement, this appeal presents a single question for our determination: What is the appropriate disposition of the appeal when (1) the trial court should have conducted a formal competency trial and (2) the trial court has determined that a retrospective competency determination is not feasible?

In our abatement order, we determined that during the hearing on the motion to revoke, some evidence came to the trial court's attention suggesting that Appellant might be incompetent, thereby triggering the requirement for the trial court to conduct an informal competency inquiry. *See* CRIM. PROC. art. 46B.004(c). We further determined that there was more than a scintilla of evidence that Appellant had a debilitating mental illness that might have prevented him from (1) consulting his counsel with a reasonable degree of rational understanding or (2) having a rational and factual understanding of the proceedings against him. *See* CRIM. PROC. art. 46B.003; *see also Turner*, 422 S.W.3d at 689 (quoting CRIM. PROC. art. 46B.024, §§ 1(c), 4). Therefore, we held, and now reaffirm, that the trial court abused its discretion by failing to initiate a formal competency trial and stay the proceedings as required by Article 46B.004(c)–(d).

Because the trial court abused its discretion, we abated this appeal and remanded this cause to the trial court with instructions to conduct, if feasible, a retrospective competency determination. *See Boyett v. State*, 545 S.W.3d 556, 566 (Tex. Crim. App. 2018); *Turner*, 422 S.W.3d at 696; *Bautista v. State*, 605 S.W.3d 520, 530 (Tex. App.—Houston [14th Dist.] 2020, no pet.). We also instructed the trial court to first determine whether such a competency trial is possible "given the passage of time, availability of evidence, and any other pertinent considerations." *Turner*, 422 S.W.3d at 696; *see* George E. Dix & John M. Schmolesky, 43 *Texas Practice: Criminal Practice and Procedure* § 31.81 (3d ed. 2020) (discussing retrospective competency hearings and the feasibility of such hearings).

Pursuant to our abatement and remand, the trial court entered its findings. The trial court found that a retrospective competency determination is not feasible.[1] Specifically, the trial court found that:

> Again, a retrospective determination of a person's legal competency to stand trial more than two years after the fact is not feasible because no new evidence would exist that was not considered at the time the determination of competency was made and no evaluation could be conducted or expert testimony submitted that could determine whether or not the defendant was competent at that time.

In light of that determination, the appropriate disposition of this appeal is a reversal of the trial court's order revoking Appellant's community supervision and a remand for new trial. *See Guerra*, 2022 WL 599241, at \*2; *Greene v. State*, 264 S.W.3d 271, 273 (Tex. App.—San Antonio 2008, pet. ref'd); *see also Anderson v. State*,

---

[1]Appellant presented the same issues concerning his competency to stand trial for his charge of assault on a public servant, a trial that occurred less than a month prior to the revocation hearing in this case. We addressed them in *Guerra v. State*, No. 11-19-00359-CR, 2022 WL 599241 (Tex. App.—Eastland Feb. 29, 2022, no pet.) (mem. op., not designated for publication). We reversed Appellant's conviction for assault and remanded the cause for a new trial for the same reasons that we are reversing and remanding this cause.

No. 04-00-00751-CR, 2002 WL 432674, at *4 (Tex. App.—San Antonio Mar. 20, 2002, no pet.) (not designated for publication). Accordingly, we sustain both of Appellant's issues.

## This Court's Ruling

We reverse the trial court's order revoking Appellant's community supervision and remand this cause to the trial court for a new trial.


JOHN M. BAILEY
CHIEF JUSTICE


November 17, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

# APPENDIX



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00010-CR

_____

## MICHAEL ANDREW GUERRA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 010874**

## O R D E R

In 2015, a jury convicted Appellant, Michael Andrew Guerra, of indecency with a child by contact. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2019). The trial court assessed his punishment at confinement for a term of five years in the Institutional Division of the Texas Department of Criminal Justice. However, the

trial court suspended Appellant's sentence and placed him on community supervision for seven years.

On March 30, 2017, the State filed its initial motion to revoke Appellant's community supervision. In September 2017, Appellant's trial counsel filed a motion suggesting incompetency wherein he requested an examination of Appellant. In February 2018, after a hearing, the trial court entered an order of commitment based upon its determination "that there is sufficient evidence to believe that this Defendant does not possess a rational understanding of the charges against him and that this Defendant is not able to provide meaningful assistance to Counsel in the preparation of this matter for trial." On September 3, 2019, the trial court heard the motion to revoke Appellant's community supervision. At the conclusion of the hearing, the trial court found that Appellant violated a condition of his community supervision by committing an offense against the laws of the State of Texas—assault on a public servant. The trial court then revoked Appellant's community supervision and sentenced Appellant to confinement for a term of five years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant raises two issues for our review, contending that the trial court abused its discretion at the hearing on the motion to revoke by (1) failing to order a formal competency examination and (2) failing to conduct an informal competency inquiry. Because the record indicates that some evidence did come to the trial court's attention suggesting Appellant was not competent at his revocation hearing, we abate this appeal and remand to the trial court to determine whether a retrospective competency determination is feasible. If it is feasible, then the trial court shall conduct one.

*Background Facts*

Appellant was convicted of indecency with a child and placed on community supervision for seven years. While Appellant was on community supervision for indecency with a child, he was convicted of assault on a public servant. Appellant's second conviction is a separate cause, trial court cause no. 011608, which we addressed in our opinion in *Guerra v. State*, No. 11-19-00359-CR, 2022 WL 599241 (Tex. App.—Eastland Feb. 29, 2022 no pet.) (mem. op., not designated for publication). Appellant's commission of and subsequent conviction for assault on a public servant served as a ground for the State's motion to revoke Appellant's community supervision.

As it relates to this case, the State introduced Appellant's second conviction at the hearing on the motion to revoke as evidence that he violated a condition of his community supervision. Included in the appellate record for this case is the reporter's record from the trial for assault on a public servant. The parties make frequent references to that reporter's record as well as the briefs filed in the other appeal. However, our review of the questions presented in this appeal is limited to the revocation hearing and the clerk's record for this cause number. Accordingly, we do not address arguments made by the parties related to trial court cause no. 011608.

In trial counsel's September 2017 motion suggesting incompetency, he described Appellant as "fixated on the idea that his detention is unlawful," exhibiting "rapid, and frequently non-stop speech," and exhibiting the belief that he is the "victim of ongoing injustice" and "is being persecuted by the system." The State did not oppose the motion and the trial court issued an order for Appellant's examination. Based upon its determination of incompetency, the trial court

11

committed Appellant to North Texas State Hospital, Vernon Campus, in February 2018.

At some point later, Appellant was hospitalized at Big Spring State Hospital. On August 8, 2018, the trial court extended Appellant's commitment by twelve months because evidence indicated that Appellant was not yet competent to stand trial. The examining physicians diagnosed Appellant with schizoaffective disorder and polysubstance abuse, which they determined required consistent medication in order for Appellant to maintain competency. Our record does not indicate when Appellant was released from Big Spring State Hospital—however, the twelve-month extension expired on August 7, 2019.

Appellant's revocation hearing occurred on September 3, 2019. At the beginning of the hearing, Appellant's counsel informed the trial court that he needed to bring a matter to the court's attention "before making an announcement of ready." Trial counsel stated that Appellant did not understand the reason for the hearing and that Appellant believed that there were no pending charges against him with respect to indecency with a child. Trial counsel further advised the court that Appellant "persists in agreeing with his present competence."

The trial court briefly questioned trial counsel about Appellant's competency. Trial counsel advised the trial court that he was not able to discuss the pending motion to revoke with Appellant because Appellant believed that his conviction for indecency with a child "went away." Trial counsel informed the trial court that, in August, Appellant was found competent and tried in his assault case, but counsel distinguished the two cases—explaining to the trial court that Appellant understood the other charges but was unable to understand the revocation hearing because he believed the indecency charge was dropped. The trial court did not question

12

Appellant, but instead declared that it was "willing to stand on the finding of competency unless there is another motion submitted concerning competency."

During the hearing, Appellant made frequent interjections indicating he did not understand the proceeding. Appellant testified at the revocation hearing. He frequently accused the trial court and attorneys of "typing up new papers" and accusing him of a crime that he believed happened while he was incarcerated. His testimony was rambling and often unintelligible. With respect to his conviction for indecency with a child, Appellant testified that there were papers that "proved" he was innocent. He also testified: "Y'all are abusing my rights, my constitutional rights and everything and the Declaration of Independence, constitutional rights, statute of limitations and civil rights." Appellant testified that, after his release from Big Spring and return to Jones County, he refused to take all medication prescribed at the state hospital in Big Spring. At the conclusion of the hearing, the trial court stated on the record that Appellant spoke "extremely rapidly, nonresponsively."

*Analysis*

Appellant raises two issues on appeal, contending that (1) the trial court erred when it failed to conduct an informal competency inquiry and (2) if the trial court did conduct an informal inquiry, the trial court erred when it failed to order a formal competency trial. Because the two issues are procedurally linked, we address them in the order set out in Article 46B. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004 (West 2018). Article 46B imposes a duty on the trial court to act when competency is implicated in a criminal proceeding. *Id.* art. 46B.004(b). Thus, if the trial court heard evidence that suggested Appellant was incompetent, it had a duty to perform an informal inquiry into Appellant's competency. *Id.* art. 46B.004(b),(c).

13

We note at the outset that Appellant presented the same issues concerning his competency to stand trial in our Cause No. 11-19-00359-CR that he presents in this appeal. The trial in Cause No. 11-19-00359-CR occurred on August 13, 2019. The revocation hearing in this appeal occurred on September 3, 2019.

In Cause No. 11-19-00359-CR, we determined that "some evidence" had come to the attention of the trial court suggesting that Appellant may not have been competent when he stood trial. *Guerra*, 2022 WL 599241, at *2. We initially abated the appeal and remanded to the trial court to determine whether a retrospective competency determination was feasible. *Id.* When the trial court determined that a retrospective competency determination was not feasible, we reversed Appellant's conviction based upon his competency claim and we remanded the case for a new trial. *Id.* at *2–3.

It is a violation of due process for an incompetent person to be tried, convicted, or sentenced for a criminal offense. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). Due process also requires that a defendant be competent for revocation proceedings. *Reeves v. State*, 46 S.W.3d 397, 399 (Tex. App.—Texarkana 2001, pet. dism'd). "Further, a defendant must be competent at the time of [ ] sentencing." *Id.* (citing CRIM. PROC. art. 42.07(2).

A person is incompetent to stand trial if the person does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." CRIM. PROC. art. 46B.003. It is the constitutional duty of each state to provide reasonable procedures to address the issue of competency. *Medina v. California*, 505 U.S. 437, 449–51 (1992). The

Texas Legislature codified this due process requirement in Article 46B, which places a duty on the trial court to act on its own motion if "evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court." CRIM. PROC. art. 46B.004.

We review a trial court's decision regarding competency inquiries for an abuse of discretion. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009). Reviewing courts determine whether the decision was arbitrary or unreasonable and do not substitute their judgment for that of the trial courts. *Id.*

The procedure for determining competency involves two distinct stages, the informal inquiry and the formal competency trial, each with a different evidentiary standard. *Boyett v. State*, 545 S.W.3d 556, 565 (Tex. Crim. App. 2018). Here, Appellant contends first that the trial court erred in failing to initiate the first step in the competency procedure. The evidentiary threshold to trigger an informal inquiry is low. *Clark v. State*, 592 S.W.3d 919, 925 (Tex. App.—Texarkana 2019, pet. ref'd). To initiate the mandatory informal inquiry, the trial court needs only a suggestion of incompetency or evidence that demonstrates "only a mere possibility of incompetency." *Boyett*, 545 S.W.3d at 565.

Article 46B.004 provides that the basis for an informal inquiry may come from any credible source, including observations indicating that the defendant is incompetent within the meaning of the statute. *See* CRIM. PROC. art. 46B.024 (listing factors that indicate incompetence). As applicable to Appellant's revocation hearing, the Article 46B factors include Appellant's ability to rationally understand the charges against him, his capacity to engage with his counsel in a reasonable manner, the presence of mental illness, and Appellant's testimony that he was not taking his prescribed medication. *Id.* art. 46B.024(1)(A), (2)(A), (4), (5)(A).

At the start of the hearing, Appellant's trial counsel informed the trial court that Appellant did not understand the reason for the hearing and that Appellant believed that there were no pending charges against him. Trial counsel also informed the trial court that Appellant believed himself competent and would object if someone were to contest competency. The trial court then asked Appellant's trial counsel if he was "able to communicate with [Appellant] concerning . . . these proceedings." Appellant's trial counsel replied that Appellant "believes the case went away . . . and I am not able to discuss [the revocation proceeding] with him."

Appellant's trial counsel also informed the trial court that Appellant was tried for assault on a public servant a month prior to the revocation hearing. In this regard, a different trial judge presided over the revocation proceeding. Trial counsel indicated that he was able to communicate with Appellant about the assault charge because Appellant recognized and understood that charge, but that Appellant did not understand the revocation proceeding case because Appellant believed that his conviction for indecency with a child had been resolved. While the trial court questioned Appellant's counsel, Appellant interjected multiple times asking for proof of the underlying charge and alleging that "they keep typing up new papers." The trial court did not question Appellant about his understanding of the procedure or charge.

The trial court was also aware that Appellant had a history of mental illness because Appellant was committed to state hospitals in 2018 to determine his competency. Appellant's commitment occurred after the State filed its original motion to revoke community supervision. One of the examining physicians, Dr. Shiraj Vahora, diagnosed Appellant with schizoaffective disorder and polysubstance abuse. Dr. Vahora's report stated that Appellant was:

16

suffering severe and abnormal mental, emotional or physical distress; is experiencing substantial mental or physical deterioration of the patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs . . . and is not able to make a rational and informed decision as to whether or not to submit to treatment as evidenced by: PATIENT STILL VERY DELUSIONAL AND DOES NOT BELIEVE HE NEEDS PSYCH MEDS AND IS CURRENTLY ON COURT ORDERED MEDS, NEEDS CONTINUING PSYCH INPATIENT TREATMENT FOR STABILITY AND TO ENSURE MED COMPLIANCE OR ELSE WILL DECOMPENSATE.

When questioned about his previous commitment at the revocation hearing, Appellant testified that he was wrongly committed for psychiatric treatment and that, once released, he refused to take his prescribed medication.

In addition to Appellant's counsel's comments and his documented history of mental illness, Appellant's own testimony indicated that he did not understand the purpose and procedure of the revocation hearing. He testified that he had been incarcerated since his trial for assault on a public servant and that he did not understand how the charge for indecency with a child could be brought if he was "incarcerated, handcuffed and ankle cuffed." Appellant testified that no one would show him the files or evidence against him.

Finally, at the conclusion of the revocation hearing, the trial court noted, for purposes of the record, that Appellant "was speaking extremely rapidly, nonresponsively. I couldn't hear . . . all of it. . . . There is going to be a problem on the record, you know, of having an accurate transcription of what he said . . . I couldn't' understand it . . . ."

Appellant contends that all of these factors provide credible evidence to clear the "suggestion" or "mere possibility" of incompetency threshold, thereby

obligating the trial court to conduct an informal competency inquiry. *See* CRIM. PROC. art. 46B.004(b); *Boyett*, 545 S.W.3d at 565. The State responds that even if there was a "suggestion" of incompetence, the trial court's questions to Appellant's counsel at the start of the hearing constituted an informal inquiry. The State also contends that the trial court had "just a month earlier, conducted an informal inquiry into Appellant's competency at the start of his assault trial."[2]

Assuming, without deciding, that the trial court's line of questioning to Appellant's trial counsel at the outset of the revocation hearing was a sufficient informal inquiry, the purpose of an informal inquiry is to determine "whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." CRIM. PROC. art. 46B. 004(c). If the trial court does find some evidence of the defendant's incompetency at the informal inquiry, "the court . . . shall stay all proceedings in the case" and conduct a formal competency trial. *Id.* art. 46B. 004(d).

Appellant contends that the inquiry revealed sufficient evidence, in this case "some evidence" as required by Article 46B.004(c), to require the trial court to initiate a formal competency trial. The Court of Criminal Appeals has explained that the "some evidence" standard in Article 46B.004(c) only requires "'more than none or a scintilla' of evidence that 'rationally may lead to a conclusion of incompetency.'" *Boyett*, 545 S.W.3d at 564 (quoting *Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013)). During the informal inquiry, the trial court "must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency." *Id.*; *see also Bautista v. State*, 605 S.W.3d 520, 527–28 (Tex. App.—Houston [14th Dist.] 2020, no pet.)

---

[2]As we previously noted, a different judge presided over Appellant's assault trial.

18

(explaining that "the informal inquiry is not the appropriate venue for determining the merits of a claim of incompetency").

It is insufficient to stay the proceedings and order a competency trial simply because the informal inquiry reveals more than a scintilla of evidence that the defendant is mentally ill, that he "refuses to cooperate with his trial counsel," or both. *Turner*, 422 S.W.3d at 691. Instead, there must be more than a scintilla of evidence that suggests that "the defendant's refusal to rationally engage with counsel is caused by his mental illness." *Boyett*, 545 S.W.3d at 564. "When a defendant's mental illness operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests, he cannot be made to stand trial consistent with due process." *Turner*, 422 S.W.3d at 691.

Thus, there must be more than a scintilla of evidence to suggest that Appellant's mental illness prevented him from (1) consulting his counsel with a reasonable degree of rational understanding or (2) having a rational and factual understanding of the proceedings against him. *See* CRIM. PROC. art. 46B.003. As set out above, at the beginning of the hearing there was at least "some evidence" that Appellant (1) had a debilitating mental illness, (2) had been prescribed medication for his illness, (3) had regained competency through his medication, and (4) was unable to rationally and factually understand the proceedings against him. Then, after Appellant's testimony, there was some evidence that Appellant had stopped taking the medication that his prior evaluating physician deemed necessary for maintaining competency. The trial court had at least some evidence that expressly indicated that Appellant needed to continue his medication "or else [he] will decompensate."

All of these things amount to at least "some evidence" that Appellant was incompetent. Therefore, we hold that the trial court abused its discretion when it failed to initiate a formal competency trial and stay the proceedings as required by Article 46B.004(c)–(d).[3] As such, we abate this appeal and remand this cause to the trial court with instructions to conduct a retrospective competency trial, if feasible. *See Boyett*, 545 S.W.3d at 566; *Turner*, 422 S.W.3d at 696; *Bautista*, 605 S.W.3d at 530. On remand, the trial court shall first determine whether such a competency trial is possible "given the passage of time, availability of evidence, and any other pertinent considerations." *Turner*, 422 S.W.3d at 696; *see* George E. Dix & John M. Schmolesky*, 43 *Texas Practice: Criminal Practice and Procedure* § 31.81 (3d ed. 2020) (discussing retrospective competency hearings and the feasibility of such hearings). Should the trial court find that a competency trial is feasible, it shall conduct the trial as required by Chapter 46B, Subchapter C, of the Code of Criminal Procedure. If the trial court finds that a retrospective competency trial is not feasible, the record of the proceedings on remand shall be returned to this court and the appeal will be reinstated at that time.

We order the trial court to prepare appropriate written findings within twenty days after it has determined whether a retrospective hearing is feasible, and the results of the proceeding should the trial court find it feasible. We further order the district clerk to forward a supplemental clerk's record containing the trial court's written findings within twenty days after the trial court files its written findings or order. Additionally, the court reporter for the 259th district court is directed to create

---

[3]The State contends that Appellant waived this right by failing to object. However, when a law imposes a duty on the trial court to act, it creates a right that is waivable only, and the inaction of a party does not waive the issue on appeal. *See, e.g.*, *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993).

20

a supplemental reporter's record containing a transcript of all further proceedings associated with the retrospective competency trial and to file the supplemental reporter's record in this court within thirty days after the trial court files its written findings or order.

Finally, we note that the State has raised a cross-issue on appeal asking us to reform the judgement to correct a clerical error involving Appellant's sentencing date. Because we abate and remand, we additionally order the trial court to correct the error so that the record accurately reflects the sentencing date.

It is so ordered.

PER CURIAM

September 8, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.